IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NATHAN VERCELLINO,

              Plaintiff,

     vs.

OPTUM INSIGHT, INC., UNITED
HEALTHCARE SERVICES, INC., BOARD OF
TRUSTEES OF AMERITAS HOLDING
COMPANY HEALTH PLAN, and AMERITAS
HOLDING COMPANY HEALTH PLAN,

              Defendants.

**4:19-CV-3048**


**MEMORANDUM AND ORDER**

## I. INTRODUCTION

This case involves a dispute brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. over whether an ERISA plan is entitled to reimbursement for benefits it paid for Plaintiff's medical treatment in the event that Plaintiff, Nathan Vercellino, recovers in tort from a third party for damages related to his injuries. Filing 14 at 6. Vercellino alleges a breach of fiduciary duty and seeks a declaration that Defendants are not entitled to reimbursement from his potential recovery as well as an injunction preventing Defendants from asserting such a lien or claim. Filing 14 at 6-8. Defendants assert counterclaims seeking a declaration that the plan is entitled to reimbursement from any recovery Vercellino receives in his pending tort suit and an order enforcing an equitable lien to that effect. Filing 16 at 13. This matter is before the Court on Vercellino's, Filing 54, and Defendants', Filing 51, cross-motions for summary judgment and Vercellino's motion to strike evidence, Filing 74. The Court denies both of Vercellino's motions and grants Defendants' Motion for Summary Judgment.

## II. BACKGROUND

On July 23, 2013, at the age of fifteen, Nathan Vercellino was injured in an all-terrain vehicle ("ATV") accident. Filing 55 at 3. Connor Kenney, who intervenes here in support of Vercellino's claims, was driving the ATV that Vercellino rode on. Filing 26 at 2. Other Kenney family members owned the ATV in question. Filing 55 at 3. Now an adult, Vercellino filed suit against the Kenneys in January 2019 in state court for damages arising from the accident, but not for medical-expense damages. Filing 14 at 4. All parties agree that damages for medical expenses are time-barred by the state statute of limitations in this case. Filing 55 at 2; Filing 64 at 6-7; Filing 65 at 7.

At the time of the accident, Vercellino was a covered dependent on his mother's health insurance plan. Filing 16 at 2; Filing 55 at 3. The plan was a self-funded ERISA plan administered by Defendants, Ameritas Holding Company and United Healthcare. Filing 16 at 7. Defendant Optum is the plan's collection agent. Filing 16 at 2. Defendants allege the plan has paid $595,770.80 in medical expenses stemming from injuries Vercellino sustained in his accident. Filing 16 at 9. Neither Defendants nor Vercellino's parents filed suit against the Kenneys or their insurer to recover for medical expenses incurred in Vercellino's care prior to the January 2019 suit. Filing 55 at 5-6; Filing 65 at 3.

Defendants assert an interest in any recovery Vercellino receives from his suit against the Kenneys. Filing 16 at 11. They argue that under the terms of the plan, they have a right to seek reimbursement of the expenses they incurred for Vercellino's medical treatment from any recovery by a covered person relating to the accident, regardless of how the claimed damages are characterized or whether suit is brought by Vercellino or his parents. Filing 65 at 4-7, 11-13. Vercellino initiated this action for declaratory and injunctive relief, praying the Court find

Defendants have no such right to reimbursement. Filing 14 at 8. Defendants counter-claimed, seeking a declaration they are entitled to reimbursement.[1] Filing 16 at 13.

In relevant part, Section 11.9 of the plan provides,

[C]overed person(s), including all dependents, agree to transfer to the plan their rights to make a claim, sue and recover damages when the injury or illness giving rise to the benefits occurs through the act or omission of another person. Alternatively, if a covered person receives any full or partial recovery, by way of judgment, settlement or otherwise, from another person or business entity, the covered person agrees to reimburse the Plan, in first priority, for any medical, disability or any other benefits paid by it (i.e., the Plan shall be first reimbursed fully, to the extent of any and all benefits paid by it, from any monies received, with the balance, if any, retained by the covered person). The obligation to reimburse the Plan, in full, in first priortiy, exists regardless of whether the judgment or settlement, etc. specifically designates the recovery, or a portion thereof, as including medical, disability or other expenses.

Filing 53-2 at 60. Defendants claim this language gives them the right to seek reimbursement if Vercellino recovers against the Kenneys. Filing 65. Vercellino argues the language limits reimbursement rights to recovery compensating for medical expenses, which are not attainable in his suit against the Kenneys because the statute of limitations has run on any claim for medical expenses incurred because of the accident. Filing 55 at 12. He also argues Defendants waived any claim for reimbursement or subrogation by not exercising their right to sue on Vercellino's parents' behalf before the statute of limitations for medical expenses had run. Filing 55 at 12. In the alternative, Vercellino argues Defendants breached their fidicuary duty to him by failing to notify his parents that their decision not to sue could negatively impact a future action brought by Vercellino. Filing 55 at 14-15. Vercellino also moves to strike the document Defendants offer, contending it is not a true and accurate copy of the plan, or that it is invalid. Filing 74.

---

[1] Both parties also seek attorneys' fees and costs. Under ERISA, the Court has discretion to award attorneys' fees and costs. 29 U.S.C. § 1132(g)(1) ("In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). The Court withholds this analysis pending any properly made post-judgment motions pursuant to Federal Rule of Civil Procedure 54.

## III. DISCUSSION

Before the Court are cross-motions for summary judgment, Filing 51, Filing 54, each seeking declaratory relief, and Vercellino's motion to strike plan documents offered by Defendants as the controlling written instruments at issue under ERISA. Filing 74.

### A.  Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis, Missouri*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Missouri Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prod.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an

absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B.  Vercellino's Motion to Strike Snowden's Declaration and Exhibits

Vercellino moves to strike Defendants' Exhibit 1 (Filing 53-2 at 7-65) ("Exhibit 1"), the supposed copy of the plan document governing the ERISA plan at issue, because it is unsigned or otherwise inadmissible. Filing 74 at 1. Because there is no requirement the document be signed and because the Court determines there is adequate foundation to support admitting the plan document, it denies the motion to strike.

Exhibit 1 is a document entitled "Ameritas Benefits Advantage Flexible Benefits Program." Filing 53-2 at 7. Exhibit 1 is attached to the declaration of Andrea Snowden, a vice president and assistant general counsel at Ameritas. Filing 53-2 at 2. In her declaration, Snowden asserts she has knowledge of the Ameritas Holding Company Health Plan through her professional duties, which include managing litigation and disputes over company benefit plans. Filing 53-2 at

5

2. She presents Exhibit 1 as "a true and accurate copy of" the plan document governing the ERISA plan at issue in this case. Filing 53-2 at 3. Vercellino argues that because Exhibit 1 is unsigned, either the original is also unsigned and therefore invalid, or Exhibit 1 is not a true copy. Filing 74 at 1. Vercellino also moves to strike most of Snowden's declaration because it relies on the allegedly inadmissible Exhibit 1, or because it is hearsay, lacks foundation, and constitutes unsupported legal conclusions. Filing 74 at 2. Similarly, Vercellino moves to strike all other exhibits attached to Snowden's declaration because they refer to and rely on Exhibit 1. Filing 74 at 2. Some of these exhibits contain purported Summary Plan Descriptions ("SPDs") relating to the plan. *E.g.*, Filing 53-2 at 66-114; *see also* Filing 53-2 at 2.

Defendants argue that Vercellino has waived any argument challenging the authenticity of the purported documents because he conceded in his briefing that the plan's terms are accurately reflected in Exhibit 1. Filing 84 at 4; *see also* Filing 68 at 3 (admitting plan language is set out in the document as Defendants state in their brief supporting summary judgment, Filing 52 at 2). Defendants also contend that even if Vercellino's objection is not waived, Exhibit 1 is admissible because Snowden set forth an adequate foundation and a plan document need not be signed under ERISA in order to be admissible. Filing 84 at 6. Further, even if Exhibit 1 were invalid, the SPDs contain identical language and would be independently admissible as plan documents themselves. Filing 84 at 7-8.

Under ERISA, "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a). Nothing in the language of § 1102 requires or even mentions a signature. *See id.* The purpose of the written instrument requirement is "to ensure that participants are on notice of the benefits to which they are entitled and their own obligations under the plan." *Wilson v. Moog Auto., Inc., Pension Plan and Tr. for U.A.W. Emps.,*

193 F.3d 1004, 1008 (8th Cir. 1999); *see also Curtis-Wright v. Schoonejongen*, 514 U.S. 73, 83,

115 S. Ct. 1223, 1230, 131 L. Ed. 2d 94 (1995) ("In the words of the key congressional report, '[a]

written plan is to be required in order that every employee may, *on examining the plan documents*,

determine exactly what his rights and obligations are under the plan.'" (emphasis in original)

(quoting H.R. Rep. No. 93–1280, p. 297 (1974) U.S. Code Cong. & Admin. News pp. 4639, 5077,

5078)). Accordingly, the Court finds that the plan document need not be signed by the plan sponsor

to be valid.

Further, Snowden's role with Ameritas and experience with company plan documents

allow her to establish foundation on which Exhibit 1 may be admitted. *See* Filing 53-2 at 2; Fed.

R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence,

the proponent must produce evidence sufficient to support a finding that the item is what the

proponent claims it is."). Because the Court does not read a signature requirement into ERISA,

because Vercellino has presented no evidence that Exhibit 1 is not the plan document it is purported

to be, and in light of the adequate foundation set forth by Snowden, Vercellino's Motion to Strike

is denied.[2]

## C.  The Motions for Summary Judgment

---

[2] The Court also notes that even if Exhibit 1 were stricken, the SPDs would still govern. *See MBI Energy Servs. v. Hoch*, 929 F.3d 506, 510-11 (8th Cir. 2019) (distinguishing the case where the plan document and SPDs conflict from the case where only SPDs are available, noting "several other circuit courts have considered this question and concluded that [precedent] does not prevent a summary plan description from functioning as the plan in the absence of a formal plan document"); *Admin. Comm. of Wal-Mart Stores, Inc v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007) ("It would be nonsensical to conclude that the plain language of the Plan requires an interpretation that renders no plan at all under the terms of ERISA [so the court will look to the SPDs where no plan is present or sufficiently complete]."). Additionally, the Court notes that the plan language in Exhibit 1 and that in the SPD from the same date are nearly identical. *Compare* Filing 53-2 at 60, *with* Filing 53-2 at 110. Either way, the parties would be bound by the language they have already agreed governs this case. *See* Filing 68 at 3 (stating, "Plaintiff admits Defendants' Undisputed Material Fact #8 sets out language of the documents" and "Plaintiff does not dispute Defendants' [quote of the plan language from Exhibit 1]").

Vercellino and Defendants move for summary judgment, asserting there are no remaining questions of material fact, and each of them is entitled to a declaration regarding their rights to any recovery Vercellino receives from his state-court suit against the Kenneys. Filing 51; Filing 54. Defendants argue that because the plan is self-funded under ERISA, potential state-law barriers to their recovery are preempted. Filing 65 at 7-11. Vercellino disputes the plan's self-funded status, citing evidence of a reinsurance carrier. Filing 68 at 1-2. Defendants further argue the plan's language unambiguously provides them with the right to be reimbursed from any settlement or judgment Vercellino receives. Filing 52 at 12-14. Vercellino argues the plan's language limits Defendants to recovery for medical expenses. Filing 55 at 11-14. He also argues the plan is not binding on him because he was a minor beneficiary and not the primary plan participant when he was injured. Filing 55 at 5-11. He further asserts that as a matter of law, Defendants have waived any right to reimbursement and are estopped from asserting that right now. Filing 14 at 5; Filing 52 at 7-10. In the alternative, he argues that the evidence before the Court demonstrates Defendants breached their fiduciary duty under ERISA by improperly advising his parents. Filing 14-15. Defendants assert the plan must be read to impose an equitable lien on any recovery Vercellino receives arising from the accident. Filing 52 at 12-14.

The Court finds Defendants' interpretation of the plan documents is reasonable, and there are no legal barriers to them asserting their rights under the plan. They also did not breach any fiduciary duty. Finding no remaining genuine issues of material fact, the Court grants Defendants' Motion for Summary Judgment and denies Vercellino's Motion for Summary Judgment.

*1. Self-Funding and ERISA Preemption*

The Court will first address Defendants' argument that the ERISA plan at issue is self-funded and therefore preempts state law. Filing 65 at 7-11. Whether the plan is self-funded or not

determines the preemptive breadth ERISA affords it. *See Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724,747, 105 S. Ct. 2380, 2393, 85 L. Ed. 2d 728 (1985) ("We are aware that our decision results in a distinction between insured and [self-funded] plans, leaving the former open to indirect regulation while the latter are not."). Vercellino argues the plan is not self-funded because it has a reinsurance carrier. Filing 68 at 1-2.

In his brief opposing Defendants' Motion for Summary Judgment, Vercellino contends that the Ameritas plan is not self-funded for ERISA preemption purposes. Filing 68 at 1-2. Vercellino points to evidence in the record that reveals the plan has a reinsurance carrier. Filing 68 at 1-2 (citing Filing 53-1, which notes messages from HM Insurance Group identifying it as the reinsurance carrier). In his reply brief supporting his motion for summary judgment, Vercellino argues that the existence of the reinsurance carrier "creates a disputed material fact as to whether the Plan is in fact a self-funded plan." Filing 78 at 7. He also alleges for the first time in his briefing that because the plan is not self-funded, Nebraska's "made whole" doctrine[3] operates to bar Defendants' claim for declaratory relief. Filing 78 at 7-8. Defendants argue that reinsurance or "stop-loss" coverage does not impact their plan's self-funded status under ERISA. Filing 72 at 11-12. Therefore, state laws governing the recoverability of damages from Vercellino's pending suit are preempted by ERISA in this case. Filing 72 at 12-13. Defendants are correct.

"ERISA preempts the application of state law even though the benefits plan holds stop-loss insurance." *Health and Welfare Plan for Emps. of REM, Inc. v. Ridler,* 124 F.3d 207 (Table), 1997 WL 559745, at *2 (8th Cir. 1997) (citing *Lincoln Mut. Cas. Co. v. Lectron Prods., Inc. Health Plan,* 970 F.2d 206, 210 (6th Cir. 1992); *Thompson v. Talquin Bldg. Prods. Co.,* 928 F.2d 649,

---

[3] The "made whole" doctrine provides that equitable principles of subrogation control in the face of contractual terms to the contrary. *Blue Cross and Blue Shield of Neb., Inc v. Dailey,* 268 Neb. 733, 745, 687 N.W.2d 689, 700 (2004). Under Nebraska law, an insurer cannot recover through subrogation until the insured has been fully compensated for his damages. *Id.*

653 (4th Cir. 1991); *United Food & Com. Workers & Emp'rs Ariz. Health & Welfare Tr. v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir. 1986)). Accordingly, the plan in question having a reinsurance carrier has no bearing on it being self-funded or not. Additionally, Defendants submitted Snowden's declaration, in which she characterizes the plan as self-funded. Filing 53-2 at 3. Vercellino has not pointed to other evidence nor shown specific facts to support his claim that the plan is not self-funded. *See* Filing 68; Filing 78; *see also Ridler*, 1997 WL 559745, at *2 (affirming district court's grant of summary judgment finding plan was self-funded, despite stop-loss coverage, where plan administrator submitted an affidavit stating plan was self-funded under ERISA and challenger introduced nothing to refute administrator's claim). Therefore, there is no material dispute of fact as to whether the plan is self-funded.

Because the plan is self-funded, federal law governs and Vercellino's appeals to state law are ineffectual. ERISA preemption "is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S. Ct. 403, 407, 112 L. Ed. 2d 356 (1990). The case law is clear that "ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan." *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 139-40 (8th Cir. 1997). Faced with a similar argument to the one Vercellino makes here, the Eighth Circuit observed the binding nature of ERISA preemption, noting, "[Plaintiffs] argue for application of this 'make whole' principle but concede, as they must, that ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan such as [Defendant's]." *Id.* (citing *Holliday*, 498 U.S. 52, 111 S. Ct. 403, 112 L. Ed. 2d 356); *see also Givens v. Wal-Mart Stores, Inc. and Assocs. Health and Welfare Plan*, 327 F. Supp. 2d 1063, 1066 (D. Neb. 2004) (finding "the Plan is clearly entitled to first dollar recovery, and Nebraska law is irrelevant to such a determination" where the plan documents say so). Because the Ameritas plan at issue here is self-funded, Nebraska anti-

subrogation and other laws that would otherwise control in place of the plan language are preempted under ERISA. Accordingly, the plan document, and not state law, determines the rights and obligations of the parties.

### 2. *Disputes Involving Plan Language*

Intertwined in the parties' remaining disputes are disagreements over the meaning of the plan's language. Vercellino argues that by its terms, the plan limits Defendants' potential reimbursement to recovery received for medical expenses only, and only in suits brought by his parents, not him. Filing 55 at 6-7; Filing 78 at 8-10. He also argues that the subrogation and reimbursement rights the plan allegedly provides are not applicable here because they were waived. Filing 55 at 11-14. Defendants interpret the plan's subrogation/reimbursement provisions as providing for reimbursement from any recovery related to the accident, medical expense or otherwise, and as applying to any covered person, including Vercellino. Filing 52 at 12-14.

Defendants point out that the ERISA plan at issue here includes a provision, section 8.2, which provides the plan administrator with "the exclusive right (except as to matters reserved to the Company or an Insurer by the Plan or a Component Plan) to interpret the Plan and to decide all matters arising thereunder, including the right to remedy possible ambiguities, inconsistencies, or omissions." Filing 72 at 5 n.1 (quoting Filing 53-2 at 43). "Where an ERISA plan grants the administrator discretion to determine eligibility for benefits and to interpret the plan's terms, courts must apply a deferential abuse-of-discretion standard of review." *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011) (citing *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 893 (8th Cir. 2009)). The Court may reverse the administrator's decision only if it is arbitrary or capricious; the decision should be affirmed if it is "reasonable, meaning supported by substantial evidence." *Id.* (citing *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir.

2006). "Substantial evidence is more than a scintilla but less than a preponderance." *Id.* (citing

*Midgett*, 561 F.3d at 897).

> a.   Recovery of Non-Medical Expense Damages

The first dispute over the meaning of the plan language is whether Defendants can recover

non-medical expense damages. Vercellino repeatedly notes throughout his briefs that because no

suit for medical-expense damages was filed within Nebraska's four-year statute of limitations for

such claims, he, his parents, and Defendants are unable to recover against the Kenneys for medical-

expense damages. *E.g.*, Filing 55 at 5-7, 11. Defendants do not deny the statute of limitations now

bars suit for medical-expense damages, and that neither they nor the Vercellinos filed such claims.

Filing 65 at 2. They do deny, however, that the state law has any effect on their ability to exercise

their reimbursement rights under the plan against Vercellino's potential recovery; they read the

plan to grant them reimbursement rights no matter how Vercellino's recovery is characterized.

Filing 65 at 2.

To the extent Vercellino argues the statute of limitations operates to prevent Defendants

from exercising rights provided for in the plan document, the Court does not agree. *See* Filing 55

at 5-6 (arguing the statute of limitations prevents Defendants' reimbursement and is not preempted

by ERISA). As discussed above, "ERISA preempts any state law that would otherwise override

the subrogation provision in a self-insured plan." *Waller*, 120 F.3d at 139-40. Thus, the plan's

provision allowing Defendants to be reimbursed governs their ability to recover, not any state

statute of limitations. Vercellino also contends the plan's language limits any reimbursement to

damages recovered for medical expenses only. Filing 55 at 12. Defendants contend the language

creates an equitable lien over *any* recovery by Vercellino stemming from the ATV accident. Filing

52 at 12-14. Defendants also note that ERISA plan language requiring reimbursement from

recoveries that do not include medical expenses is not uncommon. Filing 72 at 11 (citing *Adm. Comm. of Wal-Mart Stores, Inc. and Assocs. Health and Welfare Plan v. Shank*, 500 F.3d 834, 839 (8th Cir. 2007) (rejecting the argument that reimbursement was restricted to the portion of the settlement encompassing medical-expense damages). The Court agrees with Defendants.

Reading the plan's language, the Court finds it unambiguously provides Defendants with the right to seek reimbursement from any recovery related to the accident. The plan does not limit Defendants' reimbursement to monies characterized as medical-expense damages. In relevant part, section 11.9 of the plan provides that when a "covered person" recovers in tort for injuries for which the plan paid benefits, "[t]he obligation to reimburse the Plan, in full, in first priority, exists regardless of whether the judgment or settlement, etc. specifically designates the recovery, or a portion thereof, as including medical, disability or other expenses." Filing 53-2 at 60. On its face, this provision makes clear that any recovery stemming from the accident, not just recovery specific to medical expenses, is subject to the plan's reimbursement clause.

Vercellino argues section 11.9, read as a whole, "is specific to medical benefits paid and, by inference, recovered by the covered person." Filing 55 at 13. For support, he cites the previous sentence in the plan which states:

> Alternatively, if a covered person receives any full or partial recovery, by way of judgment, settlement or otherwise, from another person or business entity, the covered person agrees to reimburse the Plan, in first priority, for any medical, disability or any other benefits paid by it (i.e., the Plan shall be first reimbursed fully, to the extent of any and all benefits paid by it, from any monies received, with the balance, if any, retained by the covered person).

Filing 55 at 13 (quoting Filing 53-2 at 60). The Court fails to see how this sentence limits Defendants' reimbursement rights to medical-expense damages receieved by Vercellino. It clearly states the plan is to be reimbursed for "any and all benefits paid by it, *from any monies received*." Filing 55 at 13 (emphasis added) (quoting Filing 53-2 at 60). There is no material question of fact

here; the plan language unambiguously provides for reimbursement from Vercellino's potential recovery even where that recovery cannot be characterized as compensation for medical expenses.

      b.  Effect of Vercellino's Minority

The next dispute regarding the meaning of the plan language is whether Vercellino being a minor at the time of the accident has any bearing on the present suit. The parties agree that Vercellino had not obtained the age of majority at the time he was injured. Filing 52 at 9; Filing 55 at 3. Vercellino asserts that because he was a minor when injured, his parents alone were responsible for paying for his medical care, and he lacked the legal capacity to contract. Filing 55 at 10; Filing 78 at 13-14. He argues that the plan limits Defendants' reimbursement to funds recovered by his parents, and that even if it does not, his incapacity to contract leaves Defendants without recourse to any settlement or judgment he receives. Filing 55 at 6-7; Filing 78 at 8-10, 13-14. Defendants disagree. Filing 65 at 11-13.

Vercellino argues the plan documents limit Defendants' reimbursement rights to claims made by Vercellino's parents. Filing 68 at 16-17; Filing 78 at 8-9. He points to the SPDs which state:

> The provisions of this section apply to the parents, guardian, or other representative of a Dependent child who incurs a Sickness or Injury caused by a third party. If a parent or guardian may bring a claim for damages arising out of the minor's Sickness or Injury, the terms of this subrogation and reimbursement clause shall apply to that claim.

Filing 78 at 8-9 (citing Filing 53-2 at 365). Defendants argue these two sentences, taken out of an SPD and not the controlling plan document, do not change the meaning of section 11.9 of the plan, which requires "covered persons" to reimburse the plan. Filing 72 at 5-9.

Defendants further point out that one of the same SPDs Vercellino relies on here defines a covered person as including enrolled dependents. Filing 72 at 8 (citing Filing 53-2 at 226). Further,

14

the same SPD requires covered persons to reimburse the plan from settlements or judgments, "no matter how those proceeds are captioned or characterized." Filing 72 at 7-8 (quoting Filing 53-2 at 222-23). Section 11.9 of the plan document similarly states that "[c]overed person(s), including all dependents . . . receiv[ing] any full or partial recovery, by way of judgment, settlement or otherwise . . . agrees to reimburse the Plan . . . ." Filing 53-2 at 60. There is no question Vercellino was a covered person and per the terms of the plan the reimbursement provision applies to him, notwithstanding his age at the time of injury.

Vercellino also argues that despite any plan terms to the contray, because he was a minor while a covered person, he lacked the legal capcity to contract, and thus cannot be bound by the terms of the plan. Filing 78 at 13-14. Defendants assert Vercellino's incapacity to contract is irrelevant. Filing 72 at 8-9.

The Court is aware of no requirement that an ERISA plan obtain the assent of a beneficiary in order for the covered person to be bound to the plan's terms; it does not matter that the beneficiary is not the employee that signed up for coverage. *See, e.g.*, *Great -West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 204, 122 S. Ct. 708, 709-10, 151 L.Ed.2d 635 (2002) (considering a plan's claim for reimbursement from a dependant beneficiary's tort settlement); *see also Waller*, 120 F.3d at 139 (permitting reimbursement from wife's tort settlement even though she was covered under husband's employer's ERISA insurance plan); *Baxter v. Lynn*, 886 F.2d 182, 184 (8th Cir. 1989) (hearing argument over a subrogation lien involving injuries to a covered minor).

The Court finds the reasoning of the Seventh Circuit in *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Haynes*, 966 F.3d 655 (7th Cir. 2020), persuasive. In *Haynes*, a covered eighteen-year-old underwent an unsuccessful surgery and then argued that

because she was a beneficiary under an ERISA insurance plan obtained by her father during her minority and the plan never obtained her express assent to its terms, she was not bound to reimburse it from funds she later recovered in tort against the hospital that botched her surgery. *Id.* at 656-57. The Seventh Circuit rejected this argument, finding that a plan participant's covered family member was a third-party beneficiary whose personal assent was not at issue in considering rights and obligations under an ERISA plan. *Id.* at 658. By accepting the benefit of the plan paying for her treatment, Haynes incurred the obligation to reimburse the plan as provided for in the plan documents. *Id.* The court noted that it did not matter if she were a minor throughout the ordeal or not. *Id.*

The law supports a plan's right to pursue reimbursement from a beneficiary's recovery where the plan provides that right, such as here. This right to reimbursement exists whether the beneficiary personally expressed assent to the plan's terms or not. Vercellino's minority at the time of his injuries does not render his potential recovery beyond the reach of Defendants' claim for reimbursement.

c.   Subrogation and Reimbursement Rights

The parties' final dispute over the meaning of the plan language relates to Defendants' ability to seek reimbursement despite not seeking earlier subrogation. Vercellino argues that Defendants have waived their reimbursement and subrogation rights. Filing 68 at 11-16. Relying heavily on *Janssen v. Minneapolis Auto Dealers Benefit Fund*, 447 F.3d 1109 (8th Cir. 2006), Vercellino argues Defendants waived any potential reimbursement rights by not exercising their subrogation rights while the statute of limitations allowed them to do so. *See* Filing 55 at 7-10. Defendants counter that subrogation and reimbursement are separate concepts provided as

alternative rights in the plan, and the failure to exercise subrogation does not impact the availability of reimbursement. Filing 52 at 10-11; Filing 65 at 13-16. Defendants' reading of the plan is correct.

Where an ERISA plan provides for subrogation and reimbursement separately, the failure or unavailability of one of these remedies does not result in the unavailability of the other. *See McIntosh v. Pac. Holding Co.*, 992 F.2d 882, 884 (8th Cir. 1993) (allowing reimbursement from settlement funds designated for an injured minor's pain and suffering per the plan's reimbursement provision, despite no available subrogation under the plan). In the plan at issue, the first sentence of section 11.9 requires "covered person(s), including all dependents," to "transfer to the plan their rights to make a claim." Filing 53-2 at 60. In other words, the first sentence gives the plan subrogation rights. The second sentence is key, however. "*Alternatively*, if a covered person receives any full or partial recovery, by way of judgment, settlement or otherwise . . . the covered person agrees to reimburse the Plan . . . ." Filing 53-2 at 60 (emphasis added). Thus, reimbursement is seperately provided for; Defendants can exercise the right to reimbursement even though they did not exercise the right to subrogation.

Vercellino's reliance on *Janssen*, a case involving waiver of plan rights, is misplaced. First, the plan in *Janssen* provided only for subrogation; there was no separate right to reimbursement, and the court therefore addressed only subrogation rights. 447 F.3d at 1114. Second, the plan in *Janssen* took no action in response to ample notice that a party to a pending suit had moved to dismiss its subrogation claim. *Id.* at 1111. In contrast, neither the plan nor Vercellino's parents filed a suit within the statute of limitations following his injury. Third, the plan in *Janssen* limited rights to recovery only for medical expense damages. *Id.* at 1114 (contrasting the situation to that set forth in *Waller*, 120 F.3d at 140 where the plan "subrogated to all rights of recovery"). Here, the plan requires reimbursement "for any medical, disability or any other benefits paid by it" "from

any monies received," regardless of how the money is characterized. Filing 53-2 at 60. In short, the plans and the circumstances at issue in *Janssen* and this case are significantly distinguishable. Because the plan at issue provides for a separate right of reimbursement and Vercellino was a covered person and beneficiary of the plan, Defendants may exercise reimbursement rights on recovery made by Vercellino related to his injuries.[4]

### 3. Fiduciary Duty

Arguing in the alternative, Vercellino asserts Defendants breached their fiduciary duty thereby entitling Vercellino to injunctive relief preventing Defendants from any lien or claim against whatever recovery comes of his suit against the Kenneys. Filing 14 at 7-8; Filing 55 at 14. Vercellino alleges Defendants had a duty to inform his parents of the potential effect on him if they did not file a claim against the Kenneys or their insurer, and Defendants acted in bad faith by not previously informing Vercellino or his parents that they would exercise their reimbursement rights against his recovery after the statute of limitations had expired on any potential claim by his parents. Filing 55 at 14-15. Defendants argue that they merely seek to enforce the terms of the plan and that doing so cannot constitute a breach of fiduciary duty. Filing 52 at 20-21. They also assert that the plan itself was all the disclosure that was required of them, though they note there is also evidence in the record they communicated with the Vercellinos and the Kenneys' insurance company regarding their right to reimbursement in the event of a settlement. Filing 52 at 21-22.

---

[4] Vercellino briefly raises estoppel in his Complaint. Filing 14 at 6 ("Alternatively, the Defendants . . . are estopped from . . . subrogation or reimbursement because they failed to file a lawsuit within the [statute of limitations] and/or they failed to inform . . . they were waiving their right to file . . . ."). The Court has already addressed how the plan provides for subrogation and reimbursement as separate, alternative rights, and the Eighth Circuit has declined to extend estoppel beyond holding an administrator to a plausible interpretation of the plan. *See Slice v. Sons of Nor.*, 34 F.3d 630, 635 (8th Cir. 1994) (adopting First Circuit reasoning finding estoppel claims are "not actionable where the plaintiff had failed to establish that the estoppel would merely hold his employer to a plausible interpretation of the retirement plan"). There is also no evidence here of a misrepresentation on Defendants' part, which the Eighth Circuit has indicated would be required to assert estoppel in the ERISA context. *See Jensen v. SIPCO, Inc.*, 38 F.3d 945, 953 (8th Cir. 1994) ("[C]ourts recognizing estoppel in ERISA cases require proof of a material misrepresentation on which the participant or beneficiary has reasonably relied to his detriment."). Therefore, estoppel does not apply here.

Vercellino cites *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009), for the proposition that it is a breach of fiduciary duty for a plan to affirmatively mislead a beneficiary, and that in some circumstances, fiduciaries are duty bound to "disclose any material information that could adversely affect a participant's interests." (citing *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2009)). ERISA provides limited and general reporting requirements, and there is no indication or claim that Defendants have not abided by them. *See* 29 U.S.C. §§ 1021, 1022, 1024 (providing SPD and filing disclosure requirements). While these duties of communication are "supplemented by the general duty of loyalty under 29 U.S.C. § 1104(a)(1)," courts "are not quick to infer specific duties of disclosure under [the ERISA general duty of loyalty] because of the extent of the statutory and regulatory scheme." *Braden*, 588 F.3d at 598 (citing *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 952 (8th Cir. 1994); *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 207 (1st Cir. 2002)).

Vercellino points to no evidence indicating any false or misleading statement by Defendants, and he makes no allegation that Defendants failed to comply with the general disclosure requirements of ERISA. *See* Filing 55 at 14-15. He argues "the plan did not deal fairly or honestly with the minor," but he fails to identify any dishonesty. Filing 55 at 15. Vercellino's argument that Defendants had a duty to inform him or his parents that they might later assert their right to reimbursement relies on the Court inferring a specific duty of disclosure from ERISA's general fiduciary duty, but this is precisely the sort of inference courts are "not quick" to find because of the extensive statutory scheme put in place by Congress. *See Braden*, 588 F.3d at 598. To require plan administrators to provide individualized advice in each case would present a significant burden that would be beyond the requirements of ERISA and applicable law. *See Barrs*, 287 F.3d at 208 ("In general, increased burdens necessarily increase costs, discourage employers

from offering plans, and reduce benefits to employees." (citing *Varity Corp. v. Howe*, 516 U.S. 489, 497 116 S. Ct. 1065, 1070, 134 L. Ed. 2d 130 (1996); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262-63, 113 S. Ct. 2063, 2071-72, 124 L. Ed. 2d 161 (1993))). As the cases Vercellino cites in support of summary judgment on his fiduciary-duty claim demonstrate, courts are more likely to find a breach of fiduciary duty under ERISA where a plan fiduciary affirmatively misrepresents its intentions or the plan fails to disclose a conflicting financial interest likely to interfere with the rights of a beneficiary or participant. *See* Filing 55 at 14; *Howe*, 516 U.S. at 489, 116 S. Ct. at 1066, 134 L. Ed. 2d 130 (finding misrepresentation where company assured participants of secure benefits to induce transfer knowing it was insolvent); *Braden*, 588 F.3d at 589, 603 (holding claim for breach stated where plan was alleged to have not disclosed trustee's financial interest in investment fees, resulting in higher fees); *Kalda*, 481 F.3d at 642-43 (considering misrepresentation where promise to retroactively fund plan was allegedly broken); *Shea v. Esensten*, 107 F.3d 625, 626-27 (8th Cir. 1997) (holding claim for breach stated where plan failed to disclose incentive scheme minimizing referrals, which caused Shea's doctor not to refer him to a cardiologist, resulting in heart failure). Here, the plan document and SPDs clearly disclosed all parties' rights regarding subrogation and reimbursement. *See, e.g.*, Filing 53-2 at 60. There was no lack of requisite disclosure nor any misrepresentation. The Court finds that Defendants are merely asserting their rights in accordance with the plan and there is no breach of a fiduciary duty.

   *4.  Equitable Lien*

   Finally, Defendants assert that the plan creates an equitable lien against Vercellino's potential recovery. Filing 52 at 12-14. Vercellino argues there is no lien created by restating his arguments for why the plan language should not apply to a covered person who was a minor at the time of injury. Filing 68 at 16-18. The Court finds the plan does establish an equitable lien.

20

Under ERISA, "a participant, beneficiary, or fiduciary" may bring a civil action "to obtain . . . appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii). The Supreme Court has previously determined that a party seeking to assert its right to reimbursement from a third-party tort settlement as provided in a plan makes an appropriate equitable claim under ERISA. *Sereboff v. Mid-Atl. Med. Servs., Inc.*, 547 U.S. 356, 369, 126 S. Ct. 1869, 1878, 164 L. Ed. 2d 612 (2006) (holding party seeking reimbursement pursuant to plan terms "properly sought 'equitable relief' under [§ 1132(a)(3)]"). "[A] claim for reimbursement, we determined, was the modern-day equivalent of an action in equity to enforce such a contract-based lien—called an 'equitable lien by agreement.'" *U.S. Airways v. McCutchen*, 569 U.S. 88, 94, 133 S. Ct. 1537, 1545, 185 L. Ed. 2d 654 (2013) (citing *Sereboff*, 547 U.S. at 364-65, 126 S. Ct. at 1875-76, 164 L. Ed. 2d 612). Plan language can create an "equitable lien by agreement," which is an "appropriate equitable relief" under ERISA. *Sereboff*, 547 U.S. at 361-63, 126 S. Ct. at 1874-75, 164 L. Ed. 2d 612 (citing 29 U.S.C § 1132(a)(3)(B)). To establish an equitable lien by agreement, the plan must identify the portion of the fund to which it is entitled and the source of the funds for reimbursement, which must be distinct from a party's general assets. *Sereboff*, 547 U.S. at 363-65, 126 S. Ct. at 1875, 164 L. Ed. 2d 612; *Shank*, 500 F.3d at 837. The funds must also be under the control of the party against whom the lien is asserted. *Shank*, 500 F.3d at 837.

In this case, the parties mutually seek a declaration of their rights with respect to Vercellino's potential recovery. Filing 14; Filing 16. There is no dispute that the funds would be within Vercellino's control if he prevailed in his suit against the Kenneys. The plan provides the source of the funds from which Defendants would be reimbursed, stating the plan is to be reimbursed in the event of, "any full or partial recovery, by way of judgment, settlement or

otherwise, from another person or business entity . . . *from any monies received [through recovery]*." Filing 53-2 at 60 (emphasis added). Thus, the plan is entitled only to money from the settlement or judgment, not Vercellino's general assets. The amount of the fund to which the plan is entitled is also identified. *See* Filing 53-2 at 60 (providing reimbursement for "the extent of any and all benefits paid by it, from any monies received"). Thus, the plan establishes an equitable lien by agreement over any funds Vercellino recovers.

## IV. CONCLUSION

For the reasons set forth herein, the Court agrees with Defendants' interpretation of the plan. Further, the Court finds no legal support for Vercellino's arguments as to why the language in the plan requiring reimbursement would not apply to recovery by Vercellino. The Court also finds no reason to exclude the plan documents proffered by Defendants in the Snowden declaration. Accordingly, the Court denies Vercellino's Motion for Summary Judgment, grant's Defendants' Motion for Summary Judgment, and finds Defendants are entitled to the declaratory relief they seek.

IT IS ORDERED:

1. Plaintiff's Motion to Strike, Filing 74, is denied;

2. Plaintiff's Motion for Summary Judgment, Filing 54 is denied;

3. Defendants' Motion for Summary Judgment, Filing 51, is granted;

4. The plan is entitled to an equitable lien by agreement (up to the full amount of benefits paid) over any third-party recovery obtained by Nathan Vercellino relating to the July 23, 2013, accident for which the plan provided coverage;

5. The plan is entitled to reimbursement in the full amount of all benefits paid on Nathan Vercellino's behalf for injuries suffered in the July 23, 2013, accident, without any

reduction to account for any claimed attorney's fees or costs, "made whole" defense, or any other equitable or other doctrine Plaintiff asserts to limit or reduce the plan's right of reimbursement;

6. Pursuant to Federal Rule of Civil Procedure 58, a separate Judgment will be filed on this date in accordance with this Memorandum and Order; and

7. This case is terminated.

Dated this 4th day of November, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge